## WILSON, Appellee v. CINCINNATI STREET RAILWAY COMPANY, Appellant.

Ohio Appeals, First District, Hamilton County.

No. 6268. Decided June 1, 1943.

522

■■■■■■■■■■■■■■■■■■■■
■■■■■■■■■■■■■■■■■■■■
■■■■■■■■■■■■■■■■■■■■

Mr. D. T. Hackett, Cincinnati, for appellee.
Mr. Leo J. Brumleve, Cincinnati, for appellant.

## OPINION

By MATTHEWS, J.

At the first trial, the jury returned a verdict for the plaintiff which the court set aside. At a second trial, the jury returned a verdict for the defendant, which was likewise set aside. At the second trial the defendant moved for an instructed verdict and for judgment at the close of all the evidence. This motion was overruled. When the court set aside the verdict for defendant the defendant renewed its motion for judgment by filing a motion for judgment on the pleadings and the evidence. The court overruled that motion. It is from the rulings of the court on these motions that the defendant appealed to this court.

The plaintiff alleged in her petition that she had received personal injuries by being struck by one of the defendant's buses used by the defendant as a common carrier of passengers. In her petition she alleged:

"Plaintiff says that on or about the 17th day of January 1941, she left her place of employment at the northwest corner of Florida and Chase Avenues, Cincinnati, Ohio, and crossed said Chase Avenue to the south side thereof, and stood upon the sidewalk near the curb west of Florida Avenue awaiting for the approach of one of defendant's city bound buses; that she signalled said bus to stop as it approached city bound but said bus failed to slacken its speed

preparatory to taking this plaintiff on as a passenger.

Plaintiff says that instead of coming to a stop in response to her said signal and permitting her to board as a passenger, said bus swept by at great speed and so close to the said curb as to brush this plaintiff off into the street."

There are other allegations setting forth the respects in which the bus was being operated in a negligent and unlawful manner.

The defendant admitted that the plaintiff came in contact with one of its buses on Chase Street in the vicinity of Florida Avenue, and denied all other allegations.

In support of her claim the plaintiff testified:

"A. * * * I had my shopping bag in my right hand and when I crossed the street I set my shopping bag down by the post and got my purse out, my pocketbook, and it had a little purse down in it and got it, and got my fare and just at that time I looked towards Virginia down here and I saw a trolley bus coming.

Q. You say you had a shopping bag and a purse?

A. Yes, I had a shopping bag.

Q. The shopping bag was in your right hand?

A. In my right hand when I crossed the street.

Q. And your purse in your left hand?

A. My purse was in my shopping bag when I crossed the street.

Q. In your shopping bag? A. Yes.

Q. You crossed Chase? A. I did.

Q. Over to the bus stop? A. Yes, sir.

Q. You were standing on the sidewalk?

A. Right at the side of a post with 'car stop' right on it

Q. How far was that from the corner of Florida?

A. Well, now I wouldn't say. I don't just denfiitely know but it isn't very far from the intersection of Florida across Chase but just the feet I wouldn't just exactly know.

Q. Well, can you come over to this here diagram or plat and sort of indicate, this is Chase, this is Florida, there is the Knosp house?

A. Yes, sir.

Q. Will you just give the course you took when you left Knosp's house and where you stopped?

A. When I went, I went out the back door, I presume it is back here.

Q. Yes.

A. I mean they are well up on the northwest side and I went out and into Florida Avenue here, on the street, on the sidewalk and I came right down here and I looked, when I got here to cross Chase Street, I looked towards Kirby and I didn't see anything and I looked

down this way and I didn't see one and I crossed over here to this car stop. This seemed to me would be the car stop because it isn't just straight across here, it is kind of diagonally this way across and I come in and set my shopping bag down and got my pocketbook out of my shopping bag and went into it and got a dime out of it and at that time I looked and I seen the car coming right for the stop and I just thought it was coming fast and I waived for the car to stop for me.

Q. You can take the witness stand again. What happened after that, after you waived? A. Well, the only thing I know I waived for the car, the bus to stop for me.

Q. I know, but what happened?

A. Well, * * *

Q. Do you know whether the bus stopped for you or not?

A. Well, it knocked me unconscious, I didn't know what happened. I knew something knocked me unconscious. I didn't know.

Q. Your hand was injured, was it?

A. Yes, my hand was injured badly.

Q. Your right hand? A. Yes, sir.

Q. Is there a scar there?

A. Yes, there is a scar there.

Q. Will you come over here and show the jurors the scar on your right wrist?

(Witness indicates to the jury.)

Q. Right along here. Then what happened after that?

A. Well, I really don't know. When I know anything I was in the hospital after then.

Q. How long were you in the hospital?

A. Twelve weeks."

It is said by the appellant that it appears that plaintiff was standing 8 or 9 inches from the curb and away from the vehicular part of the street at the time she was struck. We find no evidence in the bill of exceptions to that effect. It may be that by means of the drawing on the black-board that apparently was used it might appear that that was the position of the plaintiff, but neither the blackboard nor a replica of any sort is in the record—and it is the record that controls this court.

Analyzing the plaintiff's evidence, we find that she "looked and I seen the car coming right for the stop and I just thought it was coming fast and I waved for the car to stop for me," that she did not know what happened but "it knocked me unconscious" and at that time she "was on the curb, up on the curb.—There is a little piece of practically plain ground. not no cement, about that much, and I was standing right on the right side of this street by the post,"— "That is right, on the curb, just by the post on the curb."

Now it is admitted that the bus struck the plaintiff. The plaintiff says the bus was coming fast, that she had waved for it to stop, and that she was on the curb anticipating that it would stop to take her on and instead of doing so, it went by her going fast and as a result the bus struck her.

It is common knowledge that a large, heavy bus, going rapidly by would have a tendency to cause a person near its course to lose equilibrium. That may have caused the collision. I believe it is such an inference, which, if drawn, could not be said by this court to be unreasonable. And, as the plaintiff had signalled and was expecting the bus to stop and not pass so close to her as to cause her to lose her equilibrium, it could not be said as a matter of law that she was negligent in occupying the position on the curb. Furthermore, the plaintiff testified without equivocation that she was on the curb and that the bus did strike her. Now there is no unvarying natural law that held that bus in the vehicular part of the street and prevented it from going upon or over the curb.

I consider it a case presenting sufficient circumstantial evidence in the record to make it impossible for this court to say that the trial judge who had a better opportunity to understand the meaning of the language used by the witnesses, was wrong in overruling the appellant's motions for judgment.

The court is unanimously of the opinion that the evidence of the defendant taken with that evidence introduced by the plaintiff which favored the defendant undoubtedly preponderated and justified the trial court in granting a new trial and a majority of the court feels that the analysis which I have made shows no substantial evidence or reasonable inference supporting the plaintiff's cause and that, therefore, the trial court should have sustained the defendant's motion for judgment.

The judgment of this court, therefore, is that the judgment of the trial court should be reversed and final judgment entered in this court for the defendant.

ROSS, P. J., and HILDEBRANT, J., concur.